IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


IN RE:    LIVING HOPE SOUTHWEST
          MEDICAL SVCS, LLC,
          Debtor

          Civil No. 10-4025


O R D E R

Now on this 9th day of March, 2011, the captioned bankruptcy appeal comes on for consideration.  Jurisdiction in this Court is proper pursuant to **28 U.S.C. § 158**, and the matter is fully briefed and ripe for decision.

1.    Appellant Pinewood Enterprises, L C ("Pinewood"), is an unsecured creditor of appellee/debtor Living Hope Southwest Medical Svcs, LLC ("Living Hope Southwest").

Living Hope Southwest filed a Chapter 11 bankruptcy petition on July 18, 2006, which was converted to a Chapter 7 case on August 15, 2008.

On June 25, 2009, the Trustee moved for approval of a settlement (the "Settlement") of certain adversary proceedings[1] (the "APs") involving other business entities owned by the members of Living Hope Southwest, Kimbro Stephens ("Kimbro") and Alice Stephens ("Alice") (collectively "the Stephenses").

Pinewood  objected to the Settlement, contending that it was

_____

[1]AP No. 4-09-07025, AP No. 4-09-07023, AP No. 4-09-07019, AP No. 4-09-07017, and AP No. 4-09-07010.

inadequate in view of the conduct of the Stephenses, that it was not in the best interests of the creditors, and that the Trustee did not have standing to assert alter ego/veil piercing claims and, thus, did not have standing to settle them. Pinewood's objections were overruled, and the Settlement was approved.

Pinewood then moved for specific findings of fact and conclusions of law relating to the Order approving the Settlement. The motion was denied, and this appeal followed.

2.   This Court reviews the Bankruptcy Court's factual findings for clear error, and its conclusions of law de novo. Where the Bankruptcy Court exercises discretion, this Court will reverse only upon a showing of abuse of discretion, i.e., when the decision "relies upon a clearly erroneous finding of fact or fails to apply the proper legal standard." **Ritchie Special Credit Investments, Ltd. v. U.S. Trustee**, **620 F.3d 847, 853 (8th Cir. 2010)**.

3.   Pinewood alleges three errors on the part of the Bankruptcy Court:

*    that it made inadequate findings of fact regarding the Settlement;

*    that it did not have jurisdiction to settle alter ego/veil piercing claims; and

*    that the Settlement was not in the best interests of the estate or the creditors.

4.   Under Arkansas law, alter ego/veil piercing claims are personal to the creditors of a corporation, and **Anderson v. Stewart**, **366 Ark. 203, 234 S.W.3d 295 (Ark. 2006),** applies the doctrine to shareholders in a limited liability company.   The Trustee lacks standing to assert such claims.   **In re Ozark Restaurant Equipment Co., Inc.**, **816 F.2d 1222 (8th Cir. 1987).**   It follows that the Trustee cannot settle them.   A trustee may only settle claims that she has standing to assert.   **In re Central Illinois Energy, L.L.C.**, **406 B.R. 371, 373-74 (Bkrtcy. C.D. Ill. 2008).**

Because a trustee *does* have standing to assert claims that a debtor has fraudulently transferred assets to a third party, an alter ego/veil piercing claim by a creditor against individual non-debtor officers of a debtor corporation may seek recovery of the same assets the trustee is trying to recover on a fraudulent transfer theory.   Indeed, that appears to be the practical problem here -- the Bankruptcy Court described the conflicting positions of Pinewood and the Trustee as a "race to the assets."

5.   The Trustee argues that there is no evidence in the record that the APs assert alter ego/veil piercing claims, inasmuch as Pinewood did not make any of the AP complaints part of the record on appeal.   Based upon its review of the record, the Court does not agree with this argument.

The record contains the Trustee's Motion For Approval Of

-3-

Compromise And Settlement And Notice Of Right To Object ("Motion For Approval"), which asserts that the Trustee "seeks recovery against the named defendants on multiple legal and equitable theories including preferences, actual fraud, constructive fraud, constructive trust, deepening insolvency, and alter ego."

The record also contains the testimony of the Trustee (at the hearing on objections to the Settlement) about AP No. 4-09-07023, against Living Hope Southeast, LLC ("Living Hope Southeast") in which she said that Count I of the complaint "is an action for a constructive trust, unjust enrichment, alter ego and for turnover of property." She further testified that the claim was that Living Hope Southeast is the alter ego of Living Hope Southwest.

The record further shows that the Bankruptcy Court acknowledged, in the hearing on objections to the Settlement, that at least one of the APs "has every kind of cause of action you can think of . . . piercing the corporate veil, alter ego, fraudulent conveyance . . . ."

Although the underlying complaints -- both the Trustee's and Pinewood's -- are unfortunately not included in the record, the foregoing excerpts in the record supply a basis, albeit scant, for the proposition that the Trustee *was* attempting to settle alter ego/veil piercing claims personal to Pinewood.

6.   The Trustee also objects that Pinewood's alter ego/veil piercing claims seek to recover monies removed from the coffers of

-4-

Living Hope Southwest by avoidable post-petition transfers.  While the citations she gives in support of this contention indicate that some of Pinewood's claims fall into this category,[2] they also indicate that some do not.  While the Trustee may be unconcerned about portions which do not fall into this post-petition transfer category, she suggests no reason why Pinewood would be willing to abandon those claims.

7.   Based upon such record evidence as there is before it, the Court concludes that the Trustee made claims in the APs that various individuals and entities had used Living Hope Southwest as an alter ego and sought thereby to recover funds of Living Hope Southwest on that theory.

In **Ozark Restaurant**, *supra*, the court stated that "we believe Congress' message is clear -- *no* trustee . . . has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors."  **816 F.2d at 1228** (emphasis in original).

**Ozark Restaurant** clearly differentiated between the authority of a bankruptcy trustee "to bring an action for damages on behalf of a debtor corporation against corporate principals for alleged misconduct, mismanagement, or breach of fiduciary duty" and

---

[2]The Trustee cites a Pinewood statement to the effect that "[t]he majority of the 'shifting' of assets and business operations of the Debtor took place post-petition." It overlooks other statements, such as this, from Pinewood's Objection To Motion For Approval Of Compromise And Settlement:  "For several years prior to the petition date, Alice and Kimbro operated the Debtor as their personal checkbook, drawing excessively high salaries and taking 'officers draws'."

actions to pierce the corporate veil, where "the corporate structure is illegally or fraudulently abused *to the detriment of a third person.*" **816 F.2d at 1225** (emphasis in original).[3]

Believing, as it does, that Pinewood's claims are of the latter type of action and not the former, the Court concludes that the Trustee had no standing to either make those claims.

8.   The Settlement lumped together five of the APs, which stated a variety of causes of action.

The Trustee's Motion For Approval states that she "seeks recovery against the named defendants on multiple legal and equitable theories including preferences, actual fraud, constructive fraud, constructive trust, deepening insolvency, and alter ego."

Since, as already noted, the Trustee did not have standing to assert alter ego claims, she would have no authority to settle them.   Thus, it was erroneous as a matter of law for the Bankruptcy Court to approve the global Settlement without carving those claims out and protecting them for the benefit of the creditors who did have standing to assert them.

9.   While it might be argued that this error is harmless -- since Pinewood's rights on the alter ego claims could not be

---

[3] The difference, stated in terms of the case at bar, is that between the Trustee suing the Stephenses to recover funds of Living Hope Southwest allegedly fraudulently transferred by them to Living Hope Southeast to the detriment of all creditors, and Pinewood suing the Stephenses to recover funds of Living Hope Southwest allegedly transferred to Living Hope Southeast for use as their own monies to the detriment of Pinewood.

compromised by the Trustee precisely because she had no standing to assert them -- the Bankruptcy Court's own comments call into question the wisdom of that argument.

The Bankruptcy Court noted -- during questioning of Alice -- that the Trustee had stated it was her intention that the Settlement not preclude Pinewood from suing Alice, but "[y]ou never know, you might get some judge who thinks that it, that that's wrong." Then, later in the hearing, the Bankruptcy Court stated: "I don't see how you could possibly preclude anyone else. And if some other judge in some other court thinks it does, there's nothing we can say here today that would change that."

These statements indicate that the Bankruptcy Court was aware that settlement of the alter ego/veil piercing claims asserted by the Trustee was improper and that they might later be deemed, albeit erroneously, to preclude such claims asserted by Pinewood.

Pinewood anticipated this risk, and asked the Bankruptcy Court, at the close of the hearing on objections to the Settlement, whether it was "determining that the trustee has standing to bring and settle the alter ego cause of action?"

The Bankruptcy Court stated it had "made no such ruling on that issue," and that it would "take another two days' worth of testimony" to do so. Thus, the Bankruptcy Court declined to address the issue of which it was aware and concerning which Pinewood had asked for clarification -- declining even to hear

closing arguments with reference to the issue -- and subsequently entered an Order approving the Settlement.

10.   Pinewood then filed a Motion To Alter And Amend Judgment And For Additional Findings Of Fact And Conclusions Of Law ("Motion To Alter And Amend").  It asked the Bankruptcy Court to amend the Order approving the Settlement

> to include specific findings of fact and conclusions of law . . . regarding what specific "alter ego" and "piercing" causes of action were brought by the Chapter 7 trustee in each of the settled adversary proceeding[s] and the Chapter 7 trustee's standing to bring and settle those causes of action in the Settlement.

The Bankruptcy Court conducted a hearing on this motion (among others then pending); took the matter under advisement for a time; and later denied it.  The Order denying the motion stated, *inter alia*, that "[t]he hearing on Pinewood's objection to the settlement resembled a trial on the merits, which was not its purpose; therefore, additional findings of fact and conclusions of law are not necessary to understand the basis for the Court's approval of the settlement."

11.   Pinewood contends that its objection to the Settlement made the Bankruptcy Court's decision whether to accept it or not a contested matter subject to the provisions of **Fed. R. Bankr. P. 9014**.  That rule incorporates the provisions of **Fed. R. Bank. P. 7052**, which in turn incorporates the provisions of **F.R.C.P. 52**.  Under **F.R.C.P. 52**, "[i]n an action tried on the facts without a

jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately."

Pinewood's contention overlooks a further provision of **F.R.C.P. 52**, to the effect that "[t]he court is not required to state findings or conclusions when ruling on a motion under Rule 12 or 56 or, unless these rules provide otherwise, on any other motion."

The Bankruptcy Court's denial of Pinewood's Motion To Alter And Amend is consistent with the provisions of **Rule 52**. It is not the failure to make findings of fact and conclusions of law that constitutes error here but, rather, the approval of the erroneous Settlement in the first place.

12. Pinewood's third argument has to do with the reasonableness of the Settlement.

As explained in **_Tri-State Financial_**, *supra*,

[t]he standard for evaluation of a settlement is whether the settlement is fair and equitable and in the best interests of the estate. A settlement is not required to constitute the best result obtainable. Rather, the court need only . . . determine that the settlement does not fall below the lowest point in the range of reasonableness.

In assessing the reasonableness of a settlement, the factors to be considered can be summarized as follows:

(A) the probability of success in the litigation;

(B) the difficulties, in any to be encountered in the matter of collection;

(C) the complexity of the litigation involved, [n]d the expense, inconvenience and delay necessarily attending

it; and

D)the paramount interest of the creditors and a
proper deference to their reasonable views in the
premises.

**525 F.3d at 654** (internal citations and quotation marks omitted).

Approval of a settlement agreement is a matter in which the
Bankruptcy Court exercises discretion.  **<u>Tri-State Financial, LLC</u>**
**<u>v. Lovald</u>, 525 F.3d 649, 654 (8th Cir. 2008).** Pursuant to **Fed. R.**
**Bankr. P. 9019,** the Bankruptcy Court may, "[o]n motion by the
trustee and after notice and a hearing, . . . approve a compromise
or settlement."

Pinewood contends that the Bankruptcy Court failed to address
the probability of success in the litigation and the paramount
interest of the creditors.  It points to the Bankruptcy Court's
acknowledgment that Pinewood had a strong case and the fact that
no creditor filed or appeared in support of the Settlement --
while two creditors opposed it.

The record reflects that the Bankruptcy Court found a
likelihood of success on the APs, in that the Stephenses and
others

just absolutely forfeited their fiduciary duty to this
debtor, took these business opportunities and
transferred them over to this new entity they created .
. . there's lots of evidence of that.  Probably, the
evidence will sustain a finding of fraud on behalf of
Mr. and Ms. Stephens and Mr. Grundy and others.
Certainly there'd be a case for civil conspiracy
involving those same people and others.

The Bankruptcy Court was less optimistic about the prospects

-10-

for collecting any judgment, for two reasons.  First, because the Stephenses, who "own or control all the money or the assets," have them "all curled up in entities, partnerships, limited partnerships, trusts, trusts with spendthrift provisions, businesses that [Kimbro] doesn't directly own but he controls." This factor also bears on the complexity of the litigation.

The second reason for the Bankruptcy Court's pessimistic assessment of collectability was that the Stephenses "have quite a war chest to fight off any attempt to collect a judgment," given that they were "drawing out money out of this new entity whenever they need it to fund their attorneys' fees."

With regard to the interest of the creditors and a proper deference to their reasonable views, the Bankruptcy Court did nothing more than question why Pinewood would object, since the Trustee would have to

> recover well over two million dollars to cover the . . . anticipated administrative claims . . . as well as the priority claims of the Internal Revenue Service before general unsecured creditors would start receiving any money and of course, whatever . . . Pinewood would receive would be shared with all the other unsecured creditors.

No secured creditor appeared in support of the Settlement, and both Pinewood and another unsecured creditor objected to it.

While it is regrettable that a settlement could be approved because owners of the debtor had fleeced it so thoroughly that there was no money left to fight them, the Court cannot say that

this finding of fact was clearly erroneous.

The Court likewise cannot say that the Bankruptcy Court abused its discretion in determining that the Settlement was in the best interests of the creditors.  It represented a substantial -- albeit insufficient -- recovery from entities who might otherwise defeat any attempts at collection.

Accordingly, the Court rejects this third argument.

13.  The real problem with the Settlement, and the Order approving it, is the one addressed in ¶¶ 4-8, *supra*: it encompassed alter ego/veil piercing claims personal to the creditors which the Trustee had no standing to assert.  In the Court's view, this error is not harmless and requires reversal of the Bankruptcy Court's Order approving the Settlement. Accordingly, that Order will be reversed and the matter will be remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

**IT IS, THEREFORE, ORDERED** that, for reasons stated herein, the Order of the Bankruptcy Court approving Settlement is reversed and the case is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

**IT IS SO ORDERED**

       /s/ Jimm Larry Hendren
      **JIMM LARRY HENDREN**
      **UNITED STATES DISTRICT JUDGE**